IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KOGOK CORPORATION          :

                                    :

     v.                       : Civil Action No. DKC 2006-0862

                                    :

PERRY JOHNSON            :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Defendant Perry Johnson to dismiss for lack of personal jurisdiction or, in the alternative, to stay proceedings.[1] (Paper 13). The issue has been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court will grant Defendant's motion to dismiss for lack of personal jurisdiction.

**I.   Background**

On April 3, 2006, Plaintiff Kogok Corp., a corporation formed under the laws of Maryland with its principal place of business in Forestville, Maryland, filed a class action complaint against Defendant alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[2] Defendant is an individual residing in Michigan who operates more than a dozen businesses

---

[1] In addition, Plaintiff has filed a motion to certify class (paper 3) and a motion to appoint a master under Fed.R.Civ.P. 53 (paper 8).

[2] Plaintiff fabricates and sells fixtures and equipment in the heating, ventilation, and air conditioning industry.

through corporations he controlled from offices located in Southfield, Michigan.[3] Plaintiff alleges that Defendant conducted business on a regular basis in Maryland and that the court has jurisdiction under Fed.R.Civ.P. 23 and 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.

The TCPA prohibits the use of "any facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). It provides for injunctive relief under § 227(b)(3)(A) and damages under § 227(b)(3)(B). The applicable statute of limitations is four years under 28 U.S.C. § 1658.

Plaintiff alleges that in 1994, Defendant designed, developed, and implemented a practice of facsimile broadcasting to promote his companies. Defendant selected, designed, and edited the content of the advertisements; assisted and directed others in the selection, design, and editing of these advertisements; and provided

---

[3] Plaintiff did not name any of Defendant's corporations as a party in the present lawsuit. Defendant states that he owns the following business: Perry Johnson, Inc.; Perry Johnson, II, Inc.; Perry Johnson Registrars, Inc.; Perry Johnson Registrars-II, Inc.; Perry Johnson Registrars Holding, Inc.; Perry Johnson Registrar's Environmental, Inc.; Perry Johnson Environmental, Inc.; Perry Johnson Consulting, Inc.; Perry Johnson Aviation, Inc.; Perry Johnson Laboratories, Inc.; Perry Johnson Laboratory Accreditation, Inc.; Perry Johnson Services, Inc.; Perry Johnson Development, Inc.; and Perry Johnson Seminars, Inc. (Paper 13, at 1 n.2). Plaintiff asserts that Defendant operates more than twenty businesses. (Paper 3, at 2). The discrepancy is immaterial to the present motion.

continuous and significant input into the content of these advertisements from 1994 through 2003. The transmissions were initiated from computers on the premises of Defendant's corporations and were sent under Defendant's direction and with his participation, assistance, knowledge, and approval.

Plaintiff alleges that between 1994 and the summer of 2003, Defendant caused approximately 1,300,000 transmissions of advertisements to be sent each year, for a total of approximately 11,700,000 transmissions. Between April 1, 2002, and the time Defendant's agents contend that the faxing terminated in the summer of 2003, Defendant caused approximately 1,625,000 transmissions to be sent.[4] Plaintiff alleges that Defendant sent facsimiles to Plaintiff on August 19, 2002; September 26, 2002; October 1, 2002; November 9, 2002; January 27, 2003; March 15, 2003; April 17, 2003; May 21, 2003; July 8, 2003; and "numerous other occasions." (Paper 1, ¶ 29). Plaintiff further alleges that more than 66% of the intended recipients of the faxed advertisements were outside of Maryland and "[a]ll of these transmissions were sent without the prior express permission or invitation of Plaintiff or any recipient."[5] *Id.* ¶ 31.

---

[4] Plaintiff states in a subsequent memorandum that the complaint encompasses facsimiles sent between February 27, 2003, and July 2003. (Paper 16, at 1-2).

[5] It is unclear whether "[a]ll of these transmissions" refers to the 66% of the recipients outside Maryland or to all transmissions sent.

On May 15, 2006, Defendant filed the present motion to dismiss or, in the alternative, to stay proceedings.  Defendant contends that the court lacks personal jurisdiction over him because he personally does not have any contacts with the state of Maryland and any alleged contacts by Defendant's corporations cannot confer personal jurisdiction over him as an individual.  In the alternative, Defendant asks that the present case be stayed because Defendant's corporations have been sued in a Maryland state court class action, *Gold Liens & Adoff v. Perry Johnson, Inc.*, No. 255190-V (Md. Cir. Ct. Montgomery County filed Oct. 8, 2004), ("*Gold Liens*"); the facsimiles at issue in the present case are the same facsimiles at issue in *Gold Liens*; and the *Gold Liens* case was stayed because the *Gold Liens* facsimiles already are part of a nationwide class action certified in *Hypertouch, Inc. v. Perry Johnson, Inc.*, No. 4186000, (Cal. Super. Ct. San Mateo County filed Oct. 5, 2001), ("California litigation").

On the issue of personal jurisdiction, Defendant provides an affidavit in which he states the following.  Defendant resides in Bloomfield Hills, Michigan, and is founder and owner of Perry Johnson, Inc. ("PJI"), a Michigan corporation with its main offices in Southfield, Michigan.  Defendant does not conduct personal business in Maryland.  He does not own, use, or possess any real property in Maryland.  Although he does not believe that he has

ever been to Maryland, he states with certainty that he has not been to Maryland in the past ten years.

PJI trains and consults with corporate clients on quality management systems created and implemented by the International Organization for Standardization.  When PJI was incorporated in 1983, it had little overhead and Defendant worked from his home.  By the late 1990s, PJI grew to a $12 million business with more than 150 employees.  At its peak, PJI had in excess of $8 million in assets and a payroll of approximately $10 million.  When PJI's business started to decline in the early 2000s, Defendant loaned PJI more than $3 million in order to keep PJI capitalized.

PJI has placed telephone calls to businesses since 1984 in order to determine their interest in PJI's services.  PJI sent businesses information by facsimile from the mid-1980s until some time in 2003.  This faxing occurred from PJI's customer database and exclusively from PJI's Southfield, Michigan, office.

Defendant states that he has not been involved personally in PJI's telemarketing efforts or in the transmitting of facsimiles since the 1980s.  He further states that he has not supervised directly either activity since approximately 1986.  Defendant asserts that a former manager of PJI established the telemarketing and faxing procedures and systems "many years ago" and he was not personally involved in the establishment of those procedures.  He contends that it was PJI's policy and practice to send facsimiles

only after receiving permission from a representative of the recipient.  "At no time did I ever instruct, allow, or encourage any agent or employee of PJI to send a fax to any person or entity prior to receiving permission or consent from some representative of the recipient."  (Paper 13, ex. 6, ¶ 15).  After Defendant learned that the TCPA prohibited sending facsimiles without prior permission, "[he] implemented additional safeguards on behalf of PJI that made it very clear that faxing without prior permission was prohibited."  *Id*. ¶ 16.

To dispute Defendant's affidavit, Plaintiff provides part of a transcript of Manuel Carrillo, PJI's Director of Information Systems, which was taken in the *Gold Liens* case.[6]

> Q:  Yes.  Are those Exhibits F through L, are they, in fact, faxes that were sent by Perry Johnson, Inc.
>
> A:  Yes, they are.
>
> Q:  And were they sent under your direction or control?
>
> A:  That's correct.
>
> Q:  Did you, in fact, personally cause them to be sent?
>
> A:  Yes, I did.
>
> Q:  And was that at the direction of anyone at Perry Johnson, Inc.?
>
> A:  Yes.

---

[6] Counsel representing Plaintiff Kogok Corporation is also counsel representing the plaintiff in the Maryland litigation.

Q:  And was that at the direction of Mr. Perry Johnson?

A:  Mr. Perry Johnson.

. . .

Q:  Okay.  And was it pursuant to your duties working at Perry Johnson, Inc.?

A:  Yes,

Q:  And Mr. Perry Johnson, Inc., is your immediate supervisor; is that correct?

A:  That's correct.

(Paper 3, ex. S, 205, 206).  Plaintiff explains that the facsimiles referenced in the transcript, Exhibits F through L, were sent between August 19, 2002, and July 8, 2003.[7]  Plaintiff also incorporates its Motion for Class Certification and the evidence therein in its opposition to Defendant's motion to dismiss.  In the class certification motion, Plaintiff provides additional portions of Mr. Carrillo's deposition in which he stated that Defendant put him in charge of the faxing in 1994 and that he reported to Defendant from 1994 to 1997.

---

[7]  Exhibit F was sent August 8, 2002; Exhibit G was sent September 26, 2002; Exhibit H was sent October 30, 2002; Exhibit I was sent November 8, 2002; Exhibit J was sent March 15, 2003; Exhibit K was sent May 21, 2003; and Exhibit L was sent July 8, 2003.  Because Plaintiff states in its opposition memorandum that the complaint involves violations between February 27, 2003, and July 2003 (paper 16, at 102), only exhibits J, K, and L appear to be relevant.

## II. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.  In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

The crucial issue is whether the defendant's contacts with the forum state of Maryland are substantial enough that it "should

reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.,* 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there – and thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

## III. Analysis

Under Maryland law, a federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process."[8] *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199

---

[8] Plaintiff asserts that under the Class Action Fairness Act of 2005, the principles governing personal jurisdiction may be relaxed, but provides no legal authority for this statement. (Paper 16, at 2-3).

(4th Cir. 1993).  The Court of Appeals of Maryland has "consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15 (2005).  Yet, courts may not "simply dispense with analysis under the long-arm statute," but rather, must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006).

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103, provides in part:

> (b)   A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1)   Transacts any business or performs any character of work or service in the State;
>
> (2)   Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3)   Causes tortious injury in the State by an act or omission in the State;
>
> (4)   Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or

10

> manufactured products used or consumed in the State; . . .

There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." § 6-103(a).

Plaintiff's opposition does not identify any particular prong of Maryland's long arm statute upon which it relies. Such a deficiency, by itself, may be reason to dismiss. Judge Blake suggested in *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 & n.1 (D.Md. 2004), that dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction either in the complaint or in an opposition to a motion to dismiss. Notwithstanding this deficiency, the contacts that Plaintiff attributes to Defendant are best analyzed under subsection (b)(1).[9]

Subsection (b)(1) allows a court to exercise personal jurisdiction over a defendant who "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(1). Under this subsection, "a

---

[9] Plaintiff asserts in its complaint that Defendant conducted business on a regular basis in Maryland, and thus appears to be invoking subsection (b)(4). (Paper 1, ¶ 2). Plaintiff, however, has provided no evidence to support the assertion that Defendant's contacts are continuous and systematic enough to satisfy this subsection. For instance, Plaintiff provides no evidence relating to the level of solicitation or business Plaintiff conducted in Maryland.

nonresident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 141 (D.Md. 1981), *aff'd*, 758 F.2d 649 (1985). *See also Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992).

With respect to due process, the exercise of personal jurisdiction over a nonresident "depends on whether the defendant's contacts with the forum state provide the basis for the suit." *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004) (citing *Carefirst of Md.*, 334 F.3d at 397). Where, as here, personal jurisdiction is premised on specific jurisdiction, the court must examine "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003). Furthermore, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377

F.3d at 407 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).  The first factor, purposeful availment, is satisfied where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state.  *Burger King Corp.*, 471 U.S. at 476.

Defendant has moved to dismiss Plaintiff's complaint on the ground that his personal contacts with Maryland are insufficient to subject him to personal jurisdiction and the contacts of his corporations cannot be attributed to him for purposes of personal jurisdiction.  Plaintiff does not dispute that Defendant personally lacks personal contact with the state of Maryland.  Instead, Plaintiff relies on contacts made by Defendant's corporations and contends that personal jurisdiction exists because (1) Defendant was involved personally in and authorized the sending of the facsimiles at issue and (2) the court may pierce the corporate veil in order to prevent fraud and enforce a paramount equity.  The evidence demonstrates, however, that Defendant has no personal contact with the state of Maryland and Plaintiff has not made a *prima facie* showing of personal jurisdiction on the basis of Defendant's involvement in the sending of facsimiles to Maryland. Moreover, Plaintiff has failed to satisfy his burden for piercing the corporate veil.  Plaintiff therefore cannot satisfy either the

long-arm statute or the due process requirement, and the court may not exercise personal jurisdiction over Defendant.

## A. Individual Liability

A defendant's status as an officer, director, employee, or owner of a corporation is insufficient, standing alone, to confer personal jurisdiction over that individual. *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F.Supp.2d 505, 513 (D.Md. 2004). Rather, personal jurisdiction over a defendant must be based on his or her personal contacts with Maryland. *Id.* at 514. As the United States Court of Appeals for the Fourth Circuit explained, "[i]f [an officer] does not personally participate in the corporation's tort, general corporation law does not subject him to liability simply by virtue of his office." *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1055 (quoting *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 111, 1144 (4th Cir. 1975)), *cert. denied*, 465 U.S. 1007 (1984).

Furthermore, in order to subject the non-resident agent to personal jurisdiction, the agent must have committed the tort that is the basis of the cause of action within the forum state. *Columbia Briargate Co.*, 713 F.2d at 1061 ("[W]here the agent has come into the state and has actually committed the tort which forms the gravamen of the cause of action within the state, it is not unfair to require him to defend in the exact forum state where he

14

committed that tort and where he availed himself of the privileges of the state."). *See also Harte-Hanks*, 299 F.Supp.2d at 515 (finding no jurisdiction where the defendant did not have any personal involvement and the alleged tort occurred outside the state of Maryland).

In his affidavit, Defendant stated that although two of his corporations conducted business in Maryland, Defendant does not transact any personal business in Maryland; he has not been to Maryland during the time period relevant to the suit; and he does not own, use, or possess any real property in Maryland.[10] Defendant also stated that he did not personally transmit any of the facsimiles at issue, nor did he authorize, direct, or sanction anyone else to transmit any facsimile without prior consent of the recipients. Finally, Defendant points out that the faxing at issue originated in the state of Michigan. Plaintiff relies on the testimony of Mr. Carrillo which it argues demonstrates that Defendant directly authorized the facsimile transmissions to Maryland. (Paper 16, at 12-13). Plaintiff's evidence is insufficient. Even if the testimony of Mr. Carrillo implies that Defendant directly authorized the sending of transmissions, the fact remains that the transmissions originated from Michigan.[11]

---

[10] Defendant does not identify the two businesses that conduct business in Maryland.

[11] The testimony does not address whether Defendant authorized the sending of the facsimiles to Maryland specifically.

Moreover, Mr. Carrillo's testimony relates to the sending of fewer than a half-dozen facsimiles, and such limited contacts do not show that Defendant purposefully availed himself of the privilege of conducting business in Maryland. *See Columbia Briargate*, 713 F.2d. at 1061.

Plaintiff also points to portions of Mr. Carrillo's deposition in which he stated that Defendant put him in charge of the faxing in 1994 and that he reported to Defendant from 1994 to 1997. This involvement relates to a period of time before the facsimiles at issue in the present lawsuit, and therefore, is irrelevant. Plaintiff presents no other evidence of contacts by Defendant with Maryland.[12]

In short, Plaintiff has not made a prima facie showing of personal jurisdiction over Mr. Johnson based on his personal contacts with Maryland.

---

[12] Plaintiff has not made a formal motion seeking discovery relating to personal jurisdiction. In his opposition memorandum, Plaintiff states that "if the Court is inclined to consider the quantum of 'evidence,' Plaintiff should be entitled to undertake further discovery as to facts relevant to personal jurisdiction." (Paper 16, at 13). The court has discretion to deny jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402-03. Other than stating that Plaintiff "should be entitled to" take discovery, Plaintiff has provided no support for this request, and accordingly Plaintiff's request for discovery will be denied.

**B.   Piercing the Corporate Veil**

In the alternative, Plaintiff asserts that the court should pierce the corporate veil to assert personal jurisdiction over Defendant.   The court may pierce the corporate veil for jurisdictional purposes if the circumstances generally allow piercing the corporate veil.   *Harte-Hanks*, 299 F.Supp.2d at 514; *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 306, *cert. denied*, 355 Md. 613 (1999). Maryland courts will pierce the corporate veil when necessary to prevent fraud or to enforce a paramount equity.   *Harte-Hanks*, 299 F.Supp.2d at 514; *Residential Warranty Corp.*, 126 Md.App. at 306. The factors used in determining whether to pierce the corporate veil include whether (1) the corporation is grossly undercapitalized; (2) the dominant shareholder siphoned corporate funds; (3) a lack of corporate records exists; (4) the existence of other indicators that a corporation is a façade for the operations of the shareholders.   *Harte-Hanks*, 299 F.Supp.2d at 514; *Residential Warranty Corp.*, 126 Md.App. at 307.   "The party seeking to pierce the corporate veil bears the burden of proof . . . [and] Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil."   *Harte-Hanks*, 299 F.Supp.2d at 514 (citations omitted).   The party asserting fraud must provide more than speculation; rather that party carries

17

the burden of showing by clear, specific acts, facts that constitute fraud.  *Residential Warranty Corp.*, 126 Md.App. at 310.

Plaintiff's contention with regard to asserted under-capitalization is insubstantial.  Plaintiff points out that Defendant created more than a dozen corporations that occupy the same offices and physical facilities; the corporations have the same or virtually the same officers, shareholders, and directors; the corporations conduct business with each other and the division between the corporations is unclear; and Defendant owns all of the corporations and they all bear his name.  Plaintiff also asserts that at one point PJI had "several dozen employees and considerable activity years ago, but since the termination of faxing in 2003, [PJI] has dwindled to nothing . . . This bleeding down and shrinking of the Defendant [sic]. . . suggests that this entity is in fact a shell." (Paper 16, at 14).  Plaintiff also suggests that Defendant may have siphoned corporate funds, in part because Defendant "travels around the world in his own Lear Jet."  *Id*. Plaintiff states generally that discovery is needed to assess these and other factors, such as whether there is an absence of corporate records.[13]

---

[13] Again, Plaintiff's request for discovery is based on speculation and is essentially a fishing expedition.  *See Carefirst*, 334 F.3d at 403 (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).

Plaintiff also argues that fraud exists because, in prior litigation, Defendant has refused to produce the "info sheets" that document consent to receive facsimiles on the ground that these records were too voluminous to justify production. Although not entirely clear, it appears that Plaintiff is referring to production in the California litigation. Plaintiff also alleges fraud because Defendant had not had to produce its database, copies of info sheets, or any data that would identify the persons who received the facsimiles or those who voiced objections or complaints. (Paper 1, at 16). "The fraud that has been worked against Plaintiff and the class asserted in the instant action is manifest: Defendants have simply lied to the court and to the parties asserting claims under the TCPA . . . stating there was documentation via 'info sheets' of prior consent for all of the transmissions of facsimiles. This has turned out to be false." *Id.* at 17. Finally, Plaintiff argues that Defendant is an essential party to the litigation and to exempt Defendant from the litigation would be "a gross inequity against the rights of the class under the TCPA." *Id.*

Plaintiff comes nowhere close to carrying its burden for lifting the corporate veil. First, Plaintiff's allegations that Defendant's corporations are undercapitalized and that Defendant may have siphoned corporate funds are without any factual support

19

whatsoever and are mere speculation.[14]   Plaintiff's argument concerning the failure to produce certain records during litigation simply is irrelevant to piercing the corporate veil, which should focus on the way in which a defendant allegedly used the corporations as a shell or façade.   Plaintiff's argument that Defendant is an essential party to the litigation and that to exempt him from the litigation is "a gross inequity" is equally without merit.   Plaintiff admits that Defendant could have been named as a party in the *Gold Liens* case but counsel for the plaintiff in the Maryland litigation – the same counsel in the present lawsuit – failed to do so before the action was stayed.[15] (Paper 16, at 5).

Accordingly, Plaintiff has failed to demonstrate that personal jurisdiction over Perry Johnson can be exercised by piercing the corporate veil.

---

[14] The only "evidence" that Plaintiff proffers with respect to undercapitalization is evidence that several of Defendant's corporations now share space with each other.

[15] Plaintiff also states that the California litigation omitted Defendant and the deadline for adding parties has passed. (Paper 16, at 6).

**IV.   Conclusion**

For the foregoing reasons, Plaintiff has not made the necessary showing for the court to assert personal jurisdiction over Defendant and Defendant's motion to dismiss will be granted. Plaintiff requests that, rather than dismissing the case, the court transfer this case to Detroit, Michigan, or San Mateo County, California (paper 16, at 19).  The other litigation is pending in state courts, rather than federal court.  Under the circumstances, the case will be dismissed and Plaintiff may re-file in the jurisdiction of its preference.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge